## FINAL SUBMISSION OF CASE TO JURY.

THE STATE v. FERRELL.

69 Ohio State—Decided, February 2, 1904.

*Conduct of Jury after Case Submitted—Section 7312, Revised Statutes—Cause is Finally Submitted—When Jury Enters Upon its Deliberations—And not at Conclusion of Charge of Court—Court Procedure.*

1  A cause is finally submitted to the jury, within the meaning of Section 7312, Revised Statutes, at such time as the court directs the jury to enter upon its deliberations, and not necessarily at the conclusion of the charge of the court to the jury.

2. Where, at the conclusion of the reading of the court's charge the jurors are permitted to separate for the purpose of the noon meal, being at the time instructed that the cause has not then been finally submitted to them, and directed to return at 1 P. M. and retire to the jury room for deliberation, and being carefully admonished as to their conduct as provided in said section, and upon their return at the hour named the indictment, the court's written charge and blank verdicts are for the first

time delivered to them, and they then retire to deliberate upon their verdict, the cause will be held to have been finally submitted at the hour of reassembling and not at the time of such separation, and in the absence of showing that such separation has worked prejudice to the defendant the fact of separation will not be ground for a new trial.

Error to the Circuit Court of Marion County.

At the April Term, 1902, of the Court of Common Pleas of Marion, James H. Ferrel was convicted, under Section 6815, Revised Statutes, of the crime of attempting to procure a miscarriage, from which attempt the woman died, and was sentenced to two years in the penitentiary. The judgment of the court in imposing sentence was reversed by the circuit court on the sole ground that "the court erred in permitting the jury to separate after the case was submitted." To this judgment of reversal the state brings error.

It appears by the undisputed evidence given at the hearing of the motion for new trial that the evidence and arugments of counsel in the case were concluded shortly before noon of June 21st, and that the court then proceeded to charge the jury the same being a written charge; that at its conclusion the court informed the jury that the cause was not then submitted to them, and then directed the jury not to have any conversation either among themselves or with any one else concerning the case, nor allow any one to speak to them concerning the same; that they should not form or express any opinion about the case until it should be finally submitted to them, and that they should return to the court room at the hour of 1 P. M., and retire to the jury room, elect one of their number foreman, who should sign their verdict when found, when and at which last-named hour the cause would be finally submitted to them for deliberation. The jury did return at that hour, and immediately retired to the jury room to deliberate in charge of the sheriff, who then handed them the indictment, the written charge of the court, the exhibits and the blank verdicts, none of which papers had before been received by any of the jury; that they thereupon proceeded to elect one of their number foreman, and there was no separation of the jury until after the verdict had been returned into open court, and the same read in the presence of the defendant and his counsel, and the jury thereupon discharged.

*Fred. E. Guthery,* Prosecuting Attorney, for plaintiff in error.

*Chas. H. Garberson* and *Scofield, Durfee & Scofield,* for defendant in error.

SPEAR, J.; DAVIS, SHAUCK, PRICE and CREW, JJ., concur.

Whether or not the cause had been finally submitted to the jury at the time that body was permitted to separate at the noon hour is the important question in the case. Primarily it is a question of fact, but the actual facts not being in dispute it becomes a question of law.

Without doubt it is the policy of our statutes that the jurors to whom shall be committed the question of the guilt or innocence of one charged with crime, should be prevented from receiving impressions during the trial calculated to influence the verdict, except such as are legitimately conveyed to them by the evidence, the arguments of counsel, and the charge of the court. Hence our statute, Section 7312, provides that:

"When the case is finally submitted, the jurors must be kept together in some convenient place, under the charge of an officer, until they agree upon a verdict, or are discharged by the court; the officer having them in charge shall not suffer any communication to be made to them, nor make any himself, except to ask them if they have agreed upon a verdict, unless by order of the court; * * * and if the jurors be permitted to separate during the trial, they should be admonished by the court that it is their duty not to converse with, nor suffer themselves to be addressed by, any person, nor to listen to any conversation on the subject of the trial, nor to form or express an opinion thereon, until the cause is finally submitted to them."

This section, as it stood in the criminal code (Section 164), prohibited the separation of jurors in the trial of felonies after being sworn until discharged, and in the trial of misdemeanors separation was forbidden after the charge of the court until discharged. The clear implication is that, by the amendment now embodied in the section above cited, it was intended to permit separation in all criminal cases during trial, and before submission, coupled with the admonition to the jury above stated, and that such separation would not naturally tend to subject the jury to improper influences, nor in any way prevent a fair trial. Another feature of the amendment is of importance in this connection. "After receiving the charge of the court," is the con-

cluding phrase of the old section; "until the cause is finally submitted to them," is the concluding phrase of the section as it now stands, and the entire section (7312) hinges on the condition with which the section begins, viz., that the case has been "finally submitted." Another implication from this same section would seem to be fairly clear, and that is that the giving of the charge of the court might not in all cases afford the test of whether or not the case had been finally submitted. It is true that a preceding section (7300) provides that at the conclusion of the evidence either party may request instructions to the jury on points of law to be given before argument, and it is suggested that these instructions might be regarded as a charge and that this induced the changed phraseology of the amendment. But this provision was also embodied in the criminal code (Section 151), and remains substantially the same. So that the fair inference is, that the charge referred to in the code is the general charge which is to be given immediately after argument. This inference is strengthened when we remember that it has been customary in our courts from time immemorial for the court, at the end of the argument, or of the evidence where no argument is had, to give a general charge to the jury, and our legislation respecting the conduct of trials always has been, and we think should be, construed in the light of the practice which has prevailed. Hence, when the old statute forbade separation of the jury after receiving the charge of the court, it was this general charge which was referred to, and were that language in the present law no doubt would exist as to the requirement to keep the jury together after receiving the charge until discharged.

It is the contention of defendant in error that while the language of the old and the new is different, yet there is no difference in the meaning; therefore that the separation of the jurors was a violation of the mandatory provision of the statute, a statute enacted to protect the rights of persons charged with crime, and prejudice will be conclusively presumed; hence the error is fatal to the judgment.

Several objections occur to this proposition. If it had been the purpose of the lawmakers to provide that the giving of the judge's charge should invariably be regarded as a final submission, no reason whatever is apparent for the change of the

statute. The former rule was a simple one, easily understood and as easily followed. For some reason the change was deemed important. We think the natural inference is that it was intended to remove the iron-clad rule and leave some discretion in the trial judge as to when he would finally submit the case. The statute requires the delivery to the jury of the written charge when a written charge has been requested, and it is usual to deliver also the indictment, blank verdicts, and such exhibits as may be put in evidence, and the submission would not be fully completed until that had been done. Nor does it follow, though this separation be deemed an irregularity, that prejudice to the rights of the defendant is to be presumed. We suppose the rule is well settled that where the failure to observe a statutory requirement naturally works prejudice to a party, the burden is not on him to show that he was in fact prejudiced. It is observed in *McHugh* v. *State,* 42 Ohio St., 154, opinion by Okey, J., that:

"Ordinarily, if a statutory provision or principle of the common law, applicable to the case, is disregarded on the trial of a person charged with crime, where its enforcement would tend to preserve his right to an impartial trial, he is to be regarded as prejudiced in his substantial rights, as he is always to be deemed so prejudiced where he is deprived of a constitutional guaranty designed for the protection of the person—still, if there has been a failure to observe some mere matter of form, where the officer or other person charged with the duty acted in good faith, the court must determine whether the failure to observe such form tended in any way to deprive the accused of a fair trial, and whether, looking to the statutory provisions relating to criminal procedure, it was intended that such failure should necessarily require a reversal of the judgment."

But in this case the jurors, by virtue of the statute, might properly be permitted to separate before the evidence and arguments had been concluded, and this permission of the statute is on the assumption that such a separation will not naturally work prejudice. If this be true, how can it be affirmed that a separation at the conclusion of the charge, the jurors being instructed that they had not yet received the case finally, as they in fact had not, and being carefully cautioned, would naturally work prejudice to the defendant? We think the assumption unwarranted. The situation would be essentially different if

that body had entered upon its deliberations, and there is manifestly strong reason for the statutory requirement that during deliberation they be kept together.

Affidavits of the jurors were given in evidence all showing that they had obeyed the court's caution, and tending to rebut any presumption of prejudice. We do not regard this evidence as relevant, there being no issue as to prejudice, although it is somewhat comforting.

In the days when courts were prompted, because of the rigidity of the criminal law, to look for technicalities in order to protect human rights, it was natural perhaps to give strained construction to language in order to secure that object. But in this enlightened day there is no occasion for unnatural scrutiny. A reasonable construction of language we think more in consonance with the spirit of our law.

It is our conclusion that, giving fair construction to the statute, the evidence shows that the case was not finally submitted until the return of the jury at 1 P. M., and the indictment, written charge, and other papers then delivered.

The judgment of the circuit court will, therefore, be reversed and that of the common pleas affirmed.